Richard B. Teitelman, Judge
I respectfully dissent. The principal opinion holds that the section - 538.210(1), RSMo Supp.2013, cap on noneconomic damages does not violate the right to a trial by jury as applied to wrongful death medical malpractice claims. This holding is premised on the conclusion that wrongful death actions are statutory and did not exist at common law. That may be true, but the issue is not whether the modem statutory wrongful death action is mir *573 rored in the common law. The issue is whether the modem statutory cause of action for wrongful death is “analogous to” a common law cause of action. State ex rel. Diehl v. O’Malley, 95 S.W.3d 82, 86 (Mo. banc 2003). The, Dodsons’ statutory wrongful death action is analogous to the common law cause of action typified by James v. Christy, 18 Mo. 162 (1853), in which a child was killed, due to negligence and the father’s estate was allowed to pursue a civil action for damages. Therefore, the Dodson family has a right to a jury trial as guaranteed by article I, section 22(a) of the Missouri Constitution. Applying the section 538.210 damage cap violates that right. Watts v. Lester E. Cosx Medical Centers, 376 S.W.3d 633, 638 (Mo. banc 2012). The judgment should be reversed to the extent that it applies the damage cap to the jury’s award of noneco-nomic damages.
Article I, section 22(a) is one of the fundamental guarantees of the Missouri Constitution, providing “the right of trial by jury as heretofore enjoyed shall remain inviolate — ” Watts, 376 S.W.3d at 637. “The right to trial by jury ... is a constitutional right, [and it] applies ‘regardless of any statutory provision,’ and is ‘beyond the reach of hostile legislation.’ ” Diehl, 95 S.W.3d at 92 (quoting Lee v. Conran, 213 Mo. 404, 111 S.W. 1151, 1153 (1908)). In this case, the statutory damage cap violates the state constitutional right to trial by jury because: (1) the Dodsons’ wrongful death action, and claim for non-economic damages is within “the right of trial by jury as heretofore enjoyed,” and (2) the Dodsons’ right to'trial by jury does not remain “inviolate” after application, of the statutory cap on noneconomic damages. Watts, 376 S.W.3d at 637-638.
I. The right to trial by jury includes statutory wrongful death actions
“The phrase ‘heretofore enjoyed’ means that ‘[citizens of Missouri are entitled to a jury trial in all actions to which they would have been . entitled to a jury when the Missouri Constitution was adopted’ in 1820.” Id. at 638 (quoting Diehl, 95 S.W.3d at 85). The jury trial right is also defined by common law limitations on the amount of a jury’s damage award. Watts, 376 S.W.3d at 638, citing Klotz v. St. Anthony’s Med. Ctr., 311 S.W.3d 752, 775 (Mo. banc 2010) (J. Wolff, concurring).
Although the common law is the analytical benchmark, the fundamental constitutional right to a jury trial is not limited to the precise contours of the common law circa 1820. Instead, the constitutional right to a jury trial attaches to a modem statutory cause of action when the statutory cause of action is a civil action for damages that is “analogous to” or a “modem variant of’ the kinds of cases triable by juries when the Missouri Constitution was originally adopted. Diehl, 95 S.W.3d at 87, 92; see also Briggs v. St. Louis & S.F. Ry. Co., 111 Mo. 168,20 S.W. 32, 33 (Mo.1892) (the constitutional right to a jury trial “is implied in all cases in which an issue of fact, in an action for the recovery of money only, is involved, whether the right or liability is one at common law or is one created by statute.”).[1] Diehl illus *574 trates the application of this analysis to modern statutory actions.
In Diehl, this Court held that the right to trial by jury attached to a statutory age and sex employment discrimination claim. The right to a jury trial did not apply due to the existence of early 19th century common law precedent recognizing a woman’s right to sue for age and sex based employment discrimination. Rather, Ms, Diehl had a right tó a jury trial' because her statutory civil action for damages was “analogous to” the type of cases triable by juries in 1820. Id. at 87. By focusing on the existehce of analogous common law causes of action, the jury trial analysis as explained in -Diehl ensures that the right to a jury trial as "heretofore enjoyed”' in fact remains “inviolate” as it limits the legislature’s power to statutorily restrict the right to a jury trial by simply recasting common law damages as statutory damages. Watts, 376 S.W.3d at 640. If, as the principal opinion implies, the right to a jury trial is precisely coextensive with the common law causes of action recognized in 1820, then the practical vitality of this fundamental constitutional right will wither according to legislative whim and as the law evolves to mediate disputes unforeseen in the early 19th century.
The Dodsons’ statutory wrongful death claim, like the statutory discrimination claims at issue in Diehl, is analogous to common law causes of action that traditionally carried the right to a jury trial because it seeks redress for wrongs to a person. In James v. Christy, a father filed a civil action to recover money damages after his son was killed due to the defendant’s negligence. 18 Mo. at 163. The father died during the pendency of the suit. This Court permitted the father’s estate to recover the value of the son’s services. Allowing recovery of the value of the son’s services is analogous to the economic damages recoverable in a modern, statutory wrongful death action. This Court then noted that the estate was not entitled to “to any remuneration for the loss of the society or comforts afforded by a child to his parent. Damages of this character died with the parent....” Id. at 164. In other words, while the father's estate — an inanimate legal entity- — could not recover noneconomic damages due to the boy’s death, the father would have been entitled to damages for the “loss of society or comforts” due to his son’s death. This Court’s untroubled discussion of the matter in James establishes that Missouri common law permitted actions that are plainly “analogous to” the modem statutory wrongful death action and that the recovery in these actions included noneco-nomic damages.[2]
Despite the fact that James unequivocally permitted the recovery of damages for loss of services, while also noting that the law recognized noneconomic damages for “loss of society and comforts,” the majority opinion discounts James because it “is not the same as an action for the wrongful death of his son,” Majority opinion, pg, 557. As established, the fact that the action in James is not identical to the modem, statutory wrongful death action is irrelevant, just as it was irrelevant in Diehl that there was no apparent common law precedent recognizing a woman’s right to sue for sex discrimination in the workplace. The right to a jury trial in a modem statutory action is not dependent on the existence of an identical common law cause of action. Diehl plainly holds that *575 the appropriate analysis is whether the modem statutory wrongful death action is “analogous to” or a “modem variant of’ a common law civil action for damages that was triable by jury in 1820.
As the principal opinion notes, there are a number of cases asserting that the common law did not recognize a cause of action for wrongful death. This observation does not, however, negate the existence of analogous common law actions permitting the recovery of- damages for a death caused by the negligence of another. To the contrary, in Sullivan v. Carlisle, 851 S.W.2d 510, 513 (Mo. banc 1993), this Court observed that the modem, statutory cause of action for a wrongful death action “was designed to compensate specifically designated^ relatives for the loss of the decedent’s economic support.” This is precisely what happened in James v. Christy when this Court specifically permitted the father’s estate to' recover the loss of the son’s services. Whether that loss is characterized as a loss of a property interest, a personal interest, or any other type of interest one can conjure, the fact remains that James evidence's that the common law permitted the recovery of money damages sustained when negligence results in the death of a loved one. The Dodson family has a right to a jury trial on their statutory wrongful death action. The dispositive issue is whether application of the cap violates that right.
II. Application of the statutory cap violates the right to a jury trial
“Missouri law always has recognized that ‘the jury’s role in a civil case is to determine the facts relating to both liability and damages and to enter a verdict accordingly.’” Watts, 376 S.W.3d at 640, quoting Estate of Overbey v. Chad Franklin Nat’l Auto Sales N., LLC, 361 S.W.3d 364, 382 (Mo. banc 2012). The amount of noneconomic damages is a fact that must be determined by the jury and is subject to the protections of the article I, section 22(a) right to trial by jury. Watts, 376 S.W.3d at 640. Once the right to a trial by jury attaches, as it does in this case, the plaintiff has the full benefit of that right free from the reach of hostile legislation. Id. Section 538.210 imposes a cap on the jury’s award of noneconomic damages that operates wholly independent of the facts of the case and, therefore, directly curtails the jury’s determination of damages. “The individual right to trial by jury cannot ‘remain inviolate’ when an injured party is deprived of the jury’s constitutionally assigned role of determining (teniages according to the particular facts of the case.” Id.
The principal opinion sidesteps the fact that the cap violates the Dodsons’ right to a jury trial by asserting that Sanders v. Ahmed, 364 S.W.3d 195, 203 (Mo. banc 2012), establishes that the legislature is free to modify a cause of action it created. The legislature is of course free to, modify a cause of action it created, but it is equally obvious that this power is subject to constitutional limitations. Specifically, once the right to a jury trial attaches, as it does in this case, then exercise of that right is “beyond the reach of hostile legislation,” including statutory caps on a jury’s damage award. Watts, 376 S.W.3d at 640. Although Sanders, decided prior to Watts, held that caps on noneconomic damages in wrongful death actions do not violate the right to a jury trial, this rationale is incorrect because it authorizes legislative curtailment of individual constitutional rights. Sanders was wrongly decided.
The judgment should be reversed to the extent that it applies the damage cap to the jury’s award of noneconomic damages.

. The principal opinion cites Hammons v. Ehney, 924 S.W.2d 843, 848 (Mo. banc 1996), for the proposition that the phrase "heretofore enjoyed” means that "the constitution protects the right as it existed when the constitution was adopted and does not provide a jury trial for proceedings subsequently created." This statement of the law is correct, but misleading in the context of this case. For instance) as explained below, this Court recognized in Diehl that the plaintiff had a constitutional right to a trial by jury in her subsequently created statutory claim for age and sex discrimination even though there was no proof of a common law action for age or sex based employment discrimination.

. The first medical malpractice case in the United States involved- a husband's claim for damages after his wife died during a surgical procedure. Cross v. Guthery, 2 Root 90, 1794 WL 198 (Conn.Super.1794); McCullum v. Tepe, 693 F.3d 696, 702 (6th Cir. 2012) (Cross was the "first reported American medical-malpractice case”).